WAGER *et al.* v. REID, appellant.

*Undue influence — setting aside conveyance made under. Ratification.*

Defendant, the family physician of W., an intemperate man, who had become financially embarrassed, having the confidence of W., under the guise of friendship and the pretense that he would assist W. in obtaining relief from such embarrassment, persuaded W. and his wife to make an absolute conveyance to defendant of his property for an inadequate consideration — a lawyer employed by defendant at the time advising that such conveyance was necessary, and defendant promised that W. might redeem. *Held*, that equity would relieve against such conveyance.

*Held*, also, that in the absence of any knowledge, at the time, on the part of W. and wife, that the grantee claimed to hold the property as his own, and to repudiate his promise to allow them to redeem, there could be no ratification or affirmance of the transaction.

APPEAL from an order made at a special term denying a motion upon a case and exceptions for a new trial of issues.

This was an action in equity, brought to set aside a deed of real estate and a transfer of personal property made by the plaintiff David H. Wager, and his wife, to the defendant, on the ground that

such conveyance and transfer were obtained under such circumstances, and upon and under the influence of such statements, promises and representations as amounted to actual or constructive fraud. And the plaintiffs claimed that the transaction, if not fraudulent, amounted only to a mortgage, from which they sought to redeem their property on payment of the debt and interest.

The complaint alleged the fact of the plaintiffs' former ownership of the property, and the circumstances under which it was transferred to the defendant; charged that such transfer was tainted with fraud; set forth an offer to repay all moneys paid by the defendant to or for the plaintiffs, with interest, and also a reasonable compensation for the defendant's services; and demanded relief as follows: 1. That the conveyance be declared fraudulent and void; 2. A re-conveyance and delivery of the property, upon payment of the moneys advanced, with interest, and such compensation; 3. An accounting as to the rents and income of the property since the transfer; 4. Compensation, in damages, for any of the property sold or incumbered; 5. For general relief, with costs.

The defendant, by his answer, admitted the plaintiffs' former ownership of the property, the conveyance and transfer thereof, but insisted that it was an absolute sale, without fraud, and for a full and fair consideration, being the full value of the property; and denied all the facts stated in the complaint, except as thereby admitted, qualified or explained.

Issues were settled by the court as follows:

" 1. Was the deed of conveyance, dated September 2, 1870, from the plaintiffs to the defendant, of the real estate in the complaint mentioned, and the transfer and delivery by the plaintiffs, or either of them, to the defendant, of the personal property in the complaint, in that behalf mentioned, procured by the defendant fraudulently, by means of abuse of confidence, false statements and inducements, fraudulent promises or other actual or constructive fraud ? "

" 2. Did the defendant procure the deed and the transfer of the personal property in evidence by means of the abuse of confidence known to him, which the plaintiff reposed in him ? "

" 3. Did the defendant fraudulently promise the plaintiff, to induce him to sign the deed, to reconvey the property in question to him, whenever he should be paid the amount he expended to pay the plaintiff's debts, and a reasonable compensation to him for his services in and about the matter ? "

4. "Has the plaintiff, since the execution of the deed and transfer, ratified them as absolute conveyances?"

The issues were tried before Mr. Justice DOOLITTLE and a jury. The jury, by their verdict, answered each question in the affirmative, except the last, which they answered in the negative.

Time was given to the defendant to make and serve a case and exceptions, and for the service of amendments, and the proceedings were stayed to enable the defendant to move for a new trial on a case and exceptions. That motion was subsequently made at a special term and denied, and the defendant appealed from the order to the general term.

*D. M. K. Johnson,* for appellant. There was no undue influence. When the question is simply one of undue influence, it is one for the *court,* and ought never to be submitted to a jury. *Casbourne* v. *Barnham,* 2 Beav. 76. A deed will not be set aside on the ground of undue influence where it appears that the nature and effect of it were fully explained to the grantor by his solicitor before it was executed. *Pratt* v. *Barker,* 1 Sim. 1; S. C., 4 Russ. 507; see, also, *Purdie* v. *Millett,* 1 Taml. 28; *Hunter* v. *Atkins,* Coop. 464; Story's Eq. Juris., §§ 259 to 265. There is no constructive or implied fraud in the case. Story's Eq. Juris., § 258; Willard's Eq. Jur. 209. There is a wide distinction between setting aside an executed contract and assuming to enforce a specific performance of an executory contract. This being a case of the former class, a court of equity ought not to interfere. *Mortlock* v. *Buller,* 10 Ves. Jr. 292; *Willan* v. *Willan,* 16 id. 83; *Seymour* v. *Delancy,* 3 Cow. 445; *Osgood* v. *Franklin,* 2 Johns. Ch. 23. Inadequacy of price is never sufficient to authorize the setting aside of a contract already executed. *Osgood* v. *Franklin, supra;* Fry on Spec. Perf. 193, and note 2; *Seymour* v. *Delancy, supra.* Fraud is a crime and will never be presumed. It must be proved the same as any other fact. *Hayes* v. *Thomson,* 1 Blount, 80; *Ridgway* v. *Ogden,* 4 Wash. C. C. 139; *Conard* v. *Nicoll,* 4 Pet. 295; *Clark* v. *White,* 12 id. 178. If an act does not necessarily imply fraud, it will not be presumed; it must be proved to have been fraudulent. *Gregg* v. *Sayer,* 8 Pet. 244; *Tardy* v. *Morgan,* 3 McLean, 358; *Hinkley* v. *Hendrickson,* 5 id. 170. If the sale and transfer were originally void, the plaintiffs, by their subsequent acts and acquiescence, ratified and confirmed them. See *Watson* v.

*Gray*, 4 Keyes, 385 ; *Storrs* v. *Barker*, 6 Johns. Ch. 166 ; 1 Pars, on Cont. 46 ; *Cairnes* v. *Bleecker*, 12 Johns. 300 ; *De Montmorency* v. *Devereaux*, 7 Cl. & Fin. 188 ; *Peterson* v. *Mayor of N. Y.*, 17 N. Y. 453 ; *Hoyt* v. *Thomas*, 19 id. 218 ; Story on Ag., §§ 239–252 ; *Condit* v. *Baldwin*, 21 id. 219. Although it was claimed that Wager was a man of intemperate habits, yet the proof was, that at the time of the sale he was perfectly sober and competent to do business.

*J. Thomas Spriggs*, and *A. Coburn*, for respondent.

GILBERT, J. This case stands upon plain and well-established principles of equity. The defendant obtained from the plaintiffs an absolute conveyance of property for a grossly inadequate consideration. He was their family physician. The principal plaintiff had for a long time been addicted to intemperance, and had become embarrassed with debts. The defendant professed great friendship for him, and in that guise undertook the management of his affairs, for the purpose of extricating him from his embarrassment. The conveyance in question was taken by him while professing to act in that capacity. According to the evidence for the plaintiffs, there was no negotiation for a purchase at all, and taking the defendant's own testimony there was none, until after the plaintiffs had been assured, by counsel selected by the defendant, that the transaction must be an absolute sale, in order to be valid. The plaintiffs both testify that they consented to make an absolute conveyance only upon the defendant's promise that he would permit them to redeem.

These, and many minor facts show very satisfactorily, that the defendant set about getting the property by artifice, and succeeded by means of the confidence which the plaintiffs reposed in him, and the influence which his professed relations to them inspired. In all such cases the title to relief in a court of equity is clear. Its jurisdiction is not limited to cases between trustee and *cestui que trust*, guardian and ward, solicitor and client, and the like, but extends to every case where influence is acquired and abused, or where confidence is reposed and betrayed. *Smith* v. *Kay*, 7 H. L. Cas. 750 (per Lord KINGSDOWN) ; *Gardner* v. *Ogden*, 22 N. Y. 342, 343.

The advice given by counsel did not purge the transaction of its inequitable element. On the contrary, it must have aided the defendant very much in accomplishing his object. But the object being such as the law condemns, it is immaterial what means were

used to bring it about.  What was said by counsel cannot, under the circumstances, be regarded as that competent and independent advice which the law requires.  The gentlemen who advised were the counsel of the defendant alone, or if not of him alone, were more the counsel of the defendant than of the plaintiffs.  Their advice was given for the protection of the defendant, and not to guide or control the action of the plaintiffs.

It is urged that because the plaintiffs were informed by those gentlemen that the effect of the conveyance would be to divest them of the property absolutely, and they afterward voluntarily executed it, intending that it should have that effect, there was no *mala fides*, and it is conclusive upon them.  The answer to this is, that the use which the defendant made of that information constitutes another element of the deception imputed to him.  But for the assurance of the counsel referred to, that it was necessary to put the transaction in the form of an absolute conveyance in order to accomplish the purpose which the defendant had undertaken for their benefit, it is not at all probable that they would have consented to make it. The plaintiffs were also influenced by the defendant's promise to allow them to redeem, and their intention to make the conveyance in the form in which it appears, sprang from the confidence they reposed in him.  The question is, not whether the plaintiffs knew what they were doing, had done, or proposed to do, but *how the intention was produced*, whether all care and providence was placed around them, *as against those who advised them*, which from their situation and relation in respect to them, they were bound to exert on their behalf.  *Huguenin* v. *Baseley*, 14 Ves. 273 (per Lord ELDON).  It is very evident they were not.  The defendant at no time changed his position toward them from the fiduciary and confidential one which he assumed at the beginning to that of a purchaser.  They were permitted to rest upon the belief that whatever should be done would be dictated by a desire to promote their interests, and would be done for their advantage.  It was the duty of the defendant, if he wished to negotiate for the purchase of the property, to tell the plaintiffs so in plain terms, and thenceforth to deal with them at arm's length.  Not having done so, he continued to bear a fiduciary relation to them, and cannot be permitted to reap any advantage from his acts in that capacity, to the injury of the plaintiffs.  He who undertakes to act for another in any matter shall not in the

same matter act for himself. If he does, he will be declared to be a trustee for the injured party.

We think there has been no ratification or affirmance of the transaction sought to be impeached. A man cannot ratify what he does not know. It does not appear that the plaintiffs had any knowledge that the defendant claimed to hold the property as his own and to repudiate his promise to allow them to redeem, at the time the alleged acts of ratification occurred. In the absence of such knowledge, there was nothing to ratify. *Savery* v. *King*, 5 H. L. Cas. 663.

For the same reason we cannot infer acquiescence by the plaintiffs from any thing which has occurred, or from the lapse of time.

The order appealed from must, therefore, be affirmed, with costs.

<div align="right">

*Order affirmed.*